ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 2 2 2013

JAMES N. HATTEN, Clerk
By: *Regusz*
Deputy Clerk

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | § | |
|---|---|---|
| Interactive Communications | § | |
| International, Inc., | § | |
| | § | $C_{A}$ |
| | § | |
| v. | § | |
| | § | |
| Alexsam, Inc. | § | 1 : 13 - M I   0 0 0 9 |
| | § | |
| | § | |
| Alexsam, Inc., | § | |
| | § | Civil Action No. 2:11-cv-00362-RSP |
| Plaintiff, | § | |
| | § | (Pending in the United States District |
| v. | § | Court for the Eastern District of Texas) |
| | § | |
| IDT Corporation, | § | The Honorable Roy S. Payne |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

### NON-PARTY INTERACTIVE COMMUNICATION
### INTERNATIONAL, INC.'S MOTION
### TO QUASH SUBPOENAS IN A CIVIL ACTION

Pursuant to Rule 45 of the Federal Rules of Civil Procedure and the

applicable Local Rules, and for the reasons set forth in the accompanying

Memorandum of Law, Interactive Communications International, Inc. ("InComm")

1

hereby respectfully moves to quash the Subpoenas served upon it by Plaintiff

Alexsam Inc., relating to the above-captioned matter in the Eastern District of

Texas.  The Subpoenas were served on January 2, 2013 and January 16, 2013 from

the United States District Court for the Northern District of Georgia.  InComm is a

non-party in the matter filed in the Eastern District of Texas.

Dated:  January 22, 2013

/s/ *Robin L. McGrath*
Robin L. McGrath
David S. Moreland
PAUL HASTINGS LLP
1170 Peachtree Street N.E.
Atlanta, Georgia 30308-2222
Telephone: (404) 815-2400
Facsimile:  (404) 815-2424
robinmcgrath@paulhastings.com
davidmoreland@paulhastings.com

*Attorneys for Interactive Communications
International, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing

MOTION TO QUASH has been forwarded via electronic mail to Alexsam, Inc.'s

counsel of record on this the 22 day of January, 2013.

/s/ *Robin L. McGrath* _____
Robin L. McGrath

## **CERTIFICATE OF COMPLAINCE WITH LR 5.1**

This is to certify that the foregoing pleading was prepared in accordance

with LR 5.1.

/s/ *Robin L. McGrath*
Robin L. McGrath

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Interactive Communications International, Inc., | § § § § | |
| v. | § § | |
| Alexsam, Inc. | § § § | 1 : 13 - M I   0 0 0 9 |
| Alexsam, Inc., | § § § | Civil Action No. 2:11-cv-00362-RSP |
| Plaintiff, | § § § | (Pending in the United States District Court for the Eastern District of Texas) |
| v. | § § | |
| IDT Corporation, | § § § | The Honorable Roy S. Payne |
| Defendant. | § § § § | |

## [PROPOSED] ORDER ON INTERACTIVE COMMUNICATION INTERNATIONAL, INC.'S MOTION TO QUASH SUBPOENAS IN A CIVIL ACTION

After considering Interactive Communication International, Inc.'s

("InComm's") *Motion to Quash Subpoenas in a Civil Action*, and having found

good cause for the same, the Court hereby GRANTS InComm's motion.

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff's Motion to

Quash Subpoenas in a Civil Action is GRANTED.

So Ordered:

Date: _____, 2013

_____
UNITED STATES DISTRICT COURT JUDGE

Submitted By:

Robin L. McGrath
David S. Moreland
PAUL HASTINGS LLP
1170 Peachtree Street N.E.
Atlanta, Georgia 30308-2222
Telephone: (404) 815-2400
Facsimile: (404) 815-2424
robinmcgrath@paulhastings.com
davidmoreland@paulhastings.com

*Attorneys for Interactive Communications*
*International, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| Interactive Communications International, Inc., | § § § § | |
| v. | § § | |
| Alexsam, Inc. | § § § | |
| Alexsam, Inc., | § § § | |
| | § | Civil Action No. 2:11-cv-00362-RSP |
| Plaintiff, | § § | |
| | § | (Pending in the United States District |
| v. | § § | Court for the Eastern District of Texas) |
| IDT Corporation, | § § | The Honorable Roy S. Payne |
| | § | |
| Defendant. | § § § | |
| | § | |

**BRIEF IN SUPPORT OF INTERACTIVE COMMUNICATION**
**INTERNATIONAL, INC.'S MOTION TO QUASH SUBPOENA**

### I.    INTRODUCTION

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Interactive

Communications International, Inc. ("InComm") moves to quash two subpoenas

for written discovery and deposition served by Alexsam, Inc. in connection with

*Alexsam, Inc. v. IDT Corp.*, Civil Action No. 2:11-cv-00362-RSP, pending in the

E.D. Texas (the "Pending IDT Litigation"). InComm seeks to quash the subpoenas

because (i) the information sought therein has no relevance to the issues in the

Pending IDT Litigation; (ii) the majority of documents and information requested

could be obtained directly from IDT, a party to the Pending IDT Litigation; and

(iii) the subpoenas are expressly designed to harass and oppress InComm, with

whom Alexsam has been involved in patent disputes since 2004.

The instant dispute between Alexsam and IDT arose when Alexsam first

sued IDT for patent infringement in September of 2007 (the "First Litigation").

(Declaration of Gene Summers ("Summers Dec.") at ¶ 3.) In that case, Alexsam

alleged that the various systems used to activate certain IDT prepaid phone cards

infringed Alexsam's patents. (*Id.*) After a trial in February of 2011 in which a

jury found IDT liable for infringement, the jury awarded damages to Alexsam in

the amount of a reasonable royalty for each IDT card activated by the systems

found to infringe. (*Id.* at ¶ 8.) The jury also awarded reasonable royalty damages

for IDT cards activated through systems that the Court *deemed* to infringe as a

discovery sanction prior to trial. (*Id.*) One of the IDT cards for which IDT was

sanctioned was an IDT prepaid phone card distributed by InComm to 7-Eleven

stores (the "7-11 Card").

2

Alexsam subsequently brought the current action against IDT for post-verdict damages with respect to the cards at issue in the First Litigation. (*Id.* at ¶ 9.) Trial in this "damages" proceeding is scheduled to begin on February 25, 2013. (Ex. 1 at 47-48.) Notwithstanding that the Pending IDT Litigation concerns only the amount of damages to be awarded, Alexsam has served a subpoena upon InComm for *technical* documents and testimony related not only to systems and methods for activating the 7-11 Cards previously deemed to infringe, but also related to the systems and methods for activating IDT cards that InComm first began distributing to retailers other than 7-11 *after* the jury verdict. It is Alexsam's position that these newly introduced cards – cards that did not exist at the time the sanctions issued and which are activated through systems that also did not exist when the sanctions issued – are somehow within the scope of the Court's discovery sanction. But, the technical information Alexsam now seeks from *InComm* has no bearing on the *sanction* issue – either the Court's sanction was intended to cover future InComm-distributed IDT cards or it was intended to apply only to the 7-11 cards. Even Alexsam admits that how these new cards are activated does not inform the sanction issue.

Moreover, both subpoenas request information from InComm that could and should be sought from defendant IDT, not InComm. For example, Alexsam seeks

3

from InComm, among other things, (i) documents regarding the number of IDT cards distributed by InComm and the date those cards were activated and (ii) the contract between IDT and InComm, documents unquestionably within IDT's possession. (Ex. 2, Second Subpoena, Doc Req. Nos. 1-2.) There is simply no need for Alexsam to harass a non-party for this information when such information could easily be obtained from a party to the case.

In view of the foregoing, and in light of the long history between InComm and Alexsam, it appears that Alexsam's two most recent subpoenas to InComm are but the latest of Alexsam's attempts to harass InComm and disrupt its business. For these reasons, and those set forth in greater detail below, InComm respectfully requests that the Court quash both the December 28 and the January 16 subpoenas to InComm.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A. The Litigations Between Alexsam and IDT.

In September of 2007, Alexsam sued IDT for patent infringement (the "First Litigation") alleging that the systems used to activate IDT prepaid phone cards

4

infringed certain system claims of U.S. Patent No. 6,000,608 ("the '608 patent").[1] Claim 57, the only independent claim asserted at trial, recites a system comprised of (i) a card encoded with a "bank identification number" or "BIN"; (ii) an "unmodified existing standard retail point-of sale device" or "POS"; (iii) a transaction processor; and (iv) a processing hub (*see* Ex. 3, '608 patent at 18:35-49).

The accused IDT prepaid phone cards are sold at various retail stores, and IDT contracts with several distributors to distribute its cards to retail outlets. (Summers Dec. at ¶ 10.) One of IDT's distributors is InComm (*Id.*; Declaration of Phillip Graves ("Graves Dec.") at ¶¶ 4-5). At the time of the First Litigation, InComm was distributing accused IDT Cards *only* to 7-11 stores (Graves Dec. at ¶ 5). The system that activated those 7-11 Cards included the specific POS devices used at 7-11 for activation (Summers Dec. at ¶ 6; Graves Dec. at ¶ 6).

During discovery, Alexsam requested that IDT identify all IDT cards encoded with a BIN (*See* Summers Dec. at ¶ 6.) IDT did not, however, identify certain cards that it did not believe were BIN-encoded (*Id.*). One of the cards IDT

---

[1] While Alexsam also asserted infringement of U.S. Patent No. 6,189,787, the court in the First Litigation granted IDT JMOL on those claims (Declaration of Gene Summers ("Summers Dec."), ¶_).

did not identify was the 7-11 Card, and as a result, Alexsam moved for sanctions

(*Id.*).  Finding that the cards should have been disclosed, the court in the First

Litigation issued a sanction against IDT in which it "deemed" infringing the cards

that Alexsam did not identify as BIN-encoded, including the 7-11 card (*Id.* at ¶ 7;

Ex. 11 at 57:1-17).  Specifically, the Court held:

> To cure the prejudice to the Plaintiff and to prevent this conduct from
> occurring in the future, I am declaring or deeming established that the
> Blackhawk cards, *the InComm cards*, the PaySpot cards, and the
> Sears cards, when used over IDT's system,  infringe the patents-in-
> suit.  The jury will be so instructed.

(*Id.*).  Again, however, the only "InComm cards" at issue in the case were the 7-11

cards.

After a jury found the remaining accused systems to infringe, it awarded

damages to Alexsam for the card systems both found and deemed to infringe

(Summers Dec. at ¶ 8).  The Court did not issue an injunction against IDT (*Id.* at ¶

9).  Instead, Alexsam instituted the Pending IDT Litigation seeking post-verdict

damages for the activation of cards at issue in the First Litigation (Summers Dec.

at ¶ 9).

Since the conclusion of the First Litigation, InComm has begun distributing

IDT cards through a number of retailers other than 7-11 (Summers Dec. at ¶ 10;

Graves Dec. at ¶ 6).  These new IDT cards are activated through systems that

6

include the POS device of each individual retailer (*id.*). Since InComm did not distribute IDT cards to these retailers during the First Litigation, the systems that activate these new cards did not exist during the First Litigation. Likewise, because the cards did not exist during the First Litigation, IDT could not have identified them as BIN-encoded cards during discovery in the First Litigation.

Nevertheless, during a December 21, 2012 pre-trial hearing in the Pending IDT Litigation, Alexsam accused IDT of failing to produce sales data for these new InComm-distributed cards (Summers Dec. at ¶ 12; Ex. 1 at 14:10-17). For the first time, Alexsam expressed a belief that the new IDT cards are within the scope of the sanction from the First Litigation and thus damages for such cards are properly at issue in the Pending IDT Litigation (Summers Dec. at ¶¶ 11, 14; Ex. 1 at 12:20-13:15). Hearing this for the first time, and believing Alexsam's position to be that the new cards/systems are included within the sanction because they are not more than colorably different than the 7-11 cards/system that were the subject of the sanction, IDT requested additional discovery in order to counter Alexsam's position. (Ex. 1 at 17:6-11 ("how are we supposed to show that they're colorably different when we haven't had a -- we didn't know about these cards were accused until after discovery was completed in the case? And -- and we've had no chance to go find out about their point of sale devices."); *see also id.* at 45:3-14).

Since that time, however, both parties have expressly acknowledged that the "no more than colorably different" standard is *not* the standard for determining whether the sanction applies to the new cards and that they will not be asserting otherwise at trial (Summers Dec. at ¶ 13; Ex. 4, Letter from McGrath 1-18-2013 at 2.) Notwithstanding this acknowledgment, Alexsam issued two subpoenas to InComm seeking technical documents and testimony intended specifically to show that the new InComm cards/systems are not more than colorably different from the 7-11 products/system or that the cards/systems otherwise infringe the '608 patent.

### B. The December 28 Subpoena

Alexsam issued its first subpoena to InComm on December 28, 2012 (Ex. 5). This subpoena includes fifteen deposition topics (including subtopics) and eleven document requests, none of which are limited in time. The very first topic in the subpoena request an InComm witness to testify about "[a]ll alleged differences between the procedures and processes used for activating IDT Cards at Point of Sale Terminals at 7-Eleven and corresponding procedures and processes used at Meijer and Family Dollar," a topic clearly related to the "colorable difference" standard that all parties agree is inapplicable. (Ex. 5 at Dep. Topic No. 1.) The remaining topics concern the technical operation of cards sold at retailers 7-Eleven, Meijer, and Family Dollar (*id.* at Dep. Topics Nos. 1, 3(a)-(c), 6, 11), the technical

8

operation of activating IDT cards generally (*id.* at Dep. Topics Nos. 4-5, 7-8), or the "business reasons (e.g. expected sales volumes, expected profiles, additional distribution, volume) for selling IDT e-cards . . ." (*id.* at Dep. Topic No. 13). None of these topics relate to whether the sanction applies to the new InComm IDT cards, which is the only issue in the Pending IDT Litigation that relates to InComm.

Additionally, the December 28 subpoena requests documents and testimony regarding "[a]ny modifications made at any Family Dollar Point of Sale Terminal for the purpose of activating any IDT card" (*Id.* at Topic No. 11; *see also* Doc. Req. Nos. 9-10).

## C. **The January 16 Subpoena**

Alexsam issued its second subpoena to InComm on January 16, 2013 (Ex. 2). In addition to modifying (and in some cases broadening) certain topics from the December 28 subpoena, this second subpoena includes six additional document requests and topics directed to technical and sales data.

Specifically, in addition to broadening request topic 11 from the first subpoena to include "modifications made at *any InComm retailer's* Point of Sale Terminal for the purpose of activating any IDT card," the subpoena also seeks substantial sales information that Alexsam could easily obtain from IDT: e.g. "the

9

number of cards activated" and "the date of activation." (Ex. 2 at Dep. Topic Nos. 1-3; Doc. Req. No. 2.)  The subpoena also seeks highly confidential documents, including InComm's "[c]ontracts and agreements relating to the sale of any IDT Card through InComm or at any InComm retailer, including but not limited to 7-Eleven, Meijer, Family Dollar, CVS and BJs." (*Id.* at Doc. Req. No. 1.)

Notably, these two subpoenas represent Alexsam's fourth attempt to obtain technical information from InComm, the first three of which involved: (i) litigation Alexsam brought against InComm in 2004; (ii) arbitration Alexsam brought against InComm in 2008; and (iii) pending litigation Alexsam has brought against several of InComm's card partners (Graves Dec. at ¶ 7).  In each instance, it took InComm a significant amount of time (months), effort, and expense to gather the requested material (*id.* at ¶¶ 8-9).  Alexsam thus issued these subpoenas knowing the substantial burden that compliance would cause InComm.

### III.   ARGUMENT AND CITATION OF AUTHORITY

Under Rule 45, an issuing court may quash or modify a subpoena for a number of reasons, including if the subpoena subjects the non-party to "undue burden." Fed. R. Civ. P. 45(c)(3)(A).  "Among the factors courts have considered in determining whether a subpoena should be modified or quashed because it presents an undue burden are the relevance of the information requested, the

10

requesting party's need for the documents, the breadth of the document request, the

time period covered by the request and the burden imposed, including the expense

and inconvenience to a nonparty to whom a request is made." *Southeastern Mech.*

*Servs., Inc. v. Brody*, No. 1:09-CV-0086-GET-SSC, 2009 U.S. Dist. LEXIS 93903,

at *8 (N.D. Ga. June 22, 2009).   Burdensome subpoenas that seek irrelevant

information may be quashed. *See id.*; *see also Zorn v. Principal Life Ins. Co.*, No.

CV 609-081, 2010 WL 3282982, at *2 (S.D. Ga. Aug. 18, 2010) ("There is no

explicit "relevancy" ground in Rule 45(c)(3)(A), but it is implicit.").   Indeed at

least one Georgia court has recognized that "[b]eing forced to produce irrelevant

information, much less data not reasonably calculated to lead to admissible

evidence, can ... constitute an undue burden." *Zorn*, 2010 WL 3282982, at *2.

### A. The Information Alexsam Seeks From InComm Is Not Relevant to the Pending IDT Litigation.

As noted, the ***only*** issue in the Pending IDT Litigation that relates to

InComm is whether the activation of IDT cards that InComm first began

distributing post-verdict to retailers other than 7-11 fall within the sanction issued

in the First Litigation such that Alexsam is entitled to post-verdict damages on

those cards.   That is, when the Court issued a sanction against the "InComm cards"

did it intend to include only those IDT cards distributed by InComm at that time

11

(*i.e.* 7-11 cards) or did it intend to include IDT cards InComm later began distributing to new retailers as well? That determination requires nothing more than an analysis of the sanction language used, the basis for the sanction, and the dates on which InComm first began distributing the new IDT cards. It does not depend on whether the new cards/systems are more than colorably different from the 7-11 cards deemed to infringe, as both parties now acknowledge.

Indeed, the colorable difference standard typically applies only in the context of a permanent injunction, when a court must determine whether products that have been modified post-injunction "are 'more than colorably different' such that 'substantial open issues' of infringement exist." *Creative Internet Adver. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 853-54 (E.D. Tex. 2009)(rev'd in part on other grounds). In an issue of first impression, one Texas district court expanded this colorable difference test to a post-verdict royalty context, where there was a jury verdict of infringement and the court had to decide if the plaintiff was entitled to an on-going royalty for products modified post-verdict. *Id.* InComm, however, has been unable to locate *any* case to even suggest that the colorable difference standard applies in a *sanctions* context where products were *deemed* to infringe as a result of alleged discovery abuse related to specific products. To the contrary, the Supreme Court requires that sanctions "must be

12

specifically related to the particular 'claim' which was at issue in the order to

provide discovery." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites

de Guinee*, 456 U.S. 694, 707 (1982).[2]

When IDT asked the Court for discovery related to the new IDT InComm

cards, it appears to have done so only because it believed that Alexsam intended to

rely on the "colorable difference" standard to argue that the new InComm IDT

cards fell within the scope of the sanction from the First Litigation (*See* Ex. 1 at

17:6-11, 45:3-14). IDT has since confirmed with Alexsam, however, that this is

not the case, and that Alexsam's position does not depend on the "colorable

difference" standard. (Summers Dec. at ¶¶ 13-14; Ex. 4, Ltr from McGrath 1-18-

2013 at 2.) Rather, Alexsam simply intends to argue that the plain language of the

sanction includes ***all*** InComm cards, including those first sold post-sanction (*i.e.* 7-

11 Cards) (*id.*). If Alexsam is right, and the new cards are within the sanction, the

discovery Alexsam seeks would be irrelevant because Alexsam will be entitled to

---

[2] Here, the court in the First Litigation sanctioned IDT for allegedly failing to
identify certain cards as BIN-encoded. Since the new InComm IDT products did
not exist at the time of the sanction, IDT could not have identified them as BIN-
encoded. *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1232
(Fed. Cir. 1996)("Federal Rule 37 is not a legal requirement to do the impossible,
and the courts have declined to assess a penalty 'for a failure to do that which it
may not have been in its power to do'")(internal citations omitted)).

13

post-verdict damages without such evidence. If Alexsam is wrong, and the cards are not within the scope of the sanction, the discovery Alexsam seeks would still be irrelevant as Alexsam would not be entitled to post-verdict damages on such cards.

That being the case, there is absolutely no reason for Alexsam to obtain the documents and testimony it now seeks from InComm through the subpoenas, as such information has no bearing on the scope of the sanction from the First Litigation. Indeed, the requested information is relevant only to show either (i) the similarities/differences between the 7-11 Cards and the new InComm IDT cards or (ii) that the new InComm IDT cards infringe the '608 patent. As to the first, both parties now agree such information is not determinative of the sanction issue. (*See* Summers Dec. at ¶¶ 13-14.) As to the second, it would be both unfair and improper for Alexsam to put on a mini-infringement case against new products that did not exist at the time of the First Litigation during the course of a damages trial. *See, e.g., Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1320-21 (Fed. Cir. 1990) (quashing in a damages case a subpoena seeking technical documents intended to support "additional mini-infringement trials on each competing product under each of its patents"). Instead, due process *demands* that a determination of infringement on new cards/systems should only be made in the context of a patent

14

infringement case in which the parties are permitted full-blown discovery and all non-infringement defenses can be pursued. *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)("A fundamental requirement of due process is 'the opportunity to be heard'")(internal citations omitted); *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, No. 98 Civ. 7766, 2008 WL 2787981, at *18 (S.D.N.Y. July 17, 2008)("the Supreme Court has held that due process affords nonparties an opportunity to formally contest personal liability before the imposition of judgment upon them").

Importantly, while the Court in the Pending IDT Litigation did permit the parties to pursue additional discovery related to the new InComm cards, it did so **only** because IDT requested such discovery under a mistaken belief that Alexsam was pressing a colorable difference standard. Especially now that both parties acknowledge this is not the applicable standard, there is simply no reason to perpetuate the mistake by allowing irrelevant discovery to proceed against InComm. *See Micro-Motion*, 894 F.2d at 1325 (recognizing that although the first court allowed third party discovery, "the caution by this court against an ancillary court considering relevancy does not preclude such consideration where there are serious relevancy questions that have not been given meaningful consideration in the main litigation.")

15

## B. Alexsam Can Obtain the Discovery It Seeks from IDT.

"Discovery that is equally available from a party to a litigation should not be sought from a nonparty." *TQP Dev. LLC v. Alaska Air Group, Inc.*, 12-CV-3065, 2012 U.S. Dist. LEXIS 172767, at *21 (N.D. Ga. Dec. 3, 2012); *Morrow v. Air Ride Techs., Inc.*, No. IP-05-113, 2006 WL 559288 at *2 (S.D. Ind. Mar. 6, 2006)(quashing subpoena where "Plaintiffs seem to concede, implicitly at least, that the information they seek may be available from Defendant."). Indeed, Courts are *required* to limit discovery against an entity if such discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(ii).

Here, there is no question that much of the discovery Alexsam seeks from InComm could be obtained instead from IDT in a more convenient, less burdensome, and less expensive manner. For example, Alexsam's subpoena to InComm seeks sales data from InComm, yet IDT has already agreed to provide this information to Alexsam. (Ex. 1 at 16:23-17:1 ("no one has ever even raised this question of -- of will we produced the sales data. We will. I have no problem providing the sales information to Alexsam.")). Similarly, Alexsam can certainly obtain the InComm/IDT contract from IDT. IDT has reemphasized its willingness to provide the requested discovery in its attached declaration, indicating "IDT has

16

agreed to produce to Alexsam the information in its possession and control regarding these issues, and has also agreed to provide data concerning the number of activations of the new InComm-distributed cards." (Summers Dec. at ¶ 18.)

Moreover, even if this Court were to find additional technical information related to the new InComm IDT cards somehow relevant to the sanctions issue, there is no question that Alexsam can obtain the information it needs from IDT. (*Id.*) Indeed, one of the issues in the First Litigation was whether the 7-11 Cards infringed the '608 patent. (Summers Dec. at ¶ 3, 6.) **At no time during the First Litigation did Alexsam subpoena InComm for or otherwise seek technical documents or testimony from InComm in order to prove its infringement case against IDT**. (Summers Dec. at ¶ 15.) To the contrary, until the sanction issued during trial, Alexsam apparently had every intention of proving its infringement case against the IDT 7-11 Cards based solely on the discovery it received from IDT. If Alexsam were able to prove infringement without discovery from InComm in the First Litigation, there should be no reason for Alexsam to need discovery from InComm in the Pending IDT Litigation.[3]

_____

[3] Interestingly, Alexsam did subpoena InComm in the First Litigation, but the subpoena included only a single topic concerning "any potential sale of any part of IDT's prepaid card business . . . ." (Ex. 6, Alexsam subpoena 8-19-2010.)

17

As for the technical data Alexsam seeks regarding the 7-11 Cards that were deemed to infringe in the First Litigation, InComm understands that IDT intends to seek relief from the sanction for such cards by arguing that the sanction should not have issued in the first place because (i) the 7-11 Cards are in fact not encoded with a BIN (and thus IDT should not have been sanctioned for failing to identify them as BIN-encoded) and (ii) the 7-11 Cards do not otherwise infringe the '608 patent (Summers Dec. at ¶ 16; Ex. 1 at 34:7-21, 35:16-36:14; Ex. 4, Letter from McGrath 1-18-2013 at 2).

As to the first issue, InComm has already provided documents showing that the 7-11 Cards are not encoded with a BIN (Ex. 7, Nov. 30 Gruber Dec.). As to the second issue, if IDT has evidence to show the 7-11 Cards do not infringe for reasons unrelated to the BIN, then Alexsam should obtain that information from IDT. If IDT does not provide the evidence, it cannot use it at trial, and Alexsam would thus have no need for it. Either way, there is no need to involve InComm.

## C. **The Subpoenas Appear Intended To Harass and Oppress InComm.**

Alexsam has a long history of litigating against InComm and its card partners. Since 2004, Alexsam has pursued discovery (documents and depositions) from InComm in connection with four separate actions (Graves Dec. at ¶ 8). In each case, the discovery sought has been of a similar nature – technical

18

information regarding the various processes and systems InComm uses to activate different types of prepaid cards (*id.* at ¶ 9)). Alexsam is thus well aware from these cases that the discovery it seeks is extremely time-consuming and difficult for InComm to produce, as InComm does not maintain the requested information in a readily accessible manner (Ex. 8, 9/25/12 Gruber Dep., 21:11-22:21).[4]

Notwithstanding the foregoing, and the fact that the discovery Alexsam seeks is both (i) irrelevant to the issues in the IDT case or (ii) much more easily obtained from IDT, Alexsam refuses to withdraw the subpoenas (Ex. 9, Richards Letter). It is thus clear to InComm that Alexsam is pursuing this discovery against InComm solely to (i) continue its campaign of harassment against InComm and (ii) obtain free discovery for a planned future action against the new InComm IDT cards. Indeed, in its cover letter to the January 16 subpoena, Alexsam freely admitted that the discovery it seeks from InComm "includes the issue of whether IDT's systems and methods for activating cards infringe the asserted claims . . ."

---

[4] Alexsam is also aware from prior experience with InComm that InComm is not privy to information concerning the POS devices used by its retail partners, yet in every case (Ex. 8, Gruber Dep., 65:24-65:6 (testifying that InComm does not receive "detailed documentation about specific changes"); Graves Dec. at ¶ 10), Alexsam demands discovery from InComm regarding the POS devices of its retailers.

(*id.*). Yet, seeking discovery in anticipation of a new infringement case is a thoroughly improper use of the discovery process. *See, e.g.*, *Micro Motion, Inc.*, 894 F.2d at 1326-27 ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, *not to find out if it has any basis for a claim*") (emphasis added).

The oppressive nature of Alexsam's subpoenas is underscored by the fact that in connection with the January 16 subpoena, Alexsam improperly gave InComm only two and a half business days to produce the large amount of documents it seeks. Fed. R. Civ. P. 45(c)(3)(A)(i) requires that "the issuing court must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply." Such a limited amount of time is especially unreasonable given that much of the information Alexsam seeks is subject to confidentiality agreements that obligate InComm to provide notice to and seek consent from its retailers before producing. Alexsam knows from past dealings with InComm that complying with these confidentiality obligations will require much more time than the few days Alexsam has provided.[5]

---

[5] Should the Court be inclined not to quash the subpoenas in their entirety, InComm respectfully requests at least four weeks for InComm to produce the requested documents in its possession in addition to an order protecting the confidentiality of the requested documents.

20

If there were any doubt that Alexsam's subpoenas were designed to harass InComm, the Court need consider nothing more than the threat Alexsam made to InComm during the 2011 plenary hearing in the arbitration that Alexsam brought against InComm. Specifically, Alexsam made clear that should InComm prevail in the arbitration (which it did), Alexsam would continue to harass InComm through future litigation against InComm, its card partners, and its customers. *See* Ex. 10, Arbitration Tr., 41:21-42:3 (Alexsam's counsel threatening that an InComm win in the arbitration "would mean that inComm and all of its partners, its customers on both ends of the chain would be vulnerable to patent litigation following this proceeding.").

In view of the foregoing, there is no question that the burden to InComm outweighs any need by Alexsam to obtain the requested discovery (or obtain it from InComm). For this reason, Alexsam's two subpoenas should be quashed. *See Micro Motion, Inc.*, 894 F.2d at 1323 ("Even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.").

21

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing

MOTION TO QUASH has been forwarded via electronic mail to Alexsam, Inc.'s

counsel of record on this the 22 day of January, 2013.

/s/ *Robin L. McGrath* _____
Robin L. McGrath

## CERTIFICATE OF COMPLAINCE WITH LR 5.1

This is to certify that the foregoing pleading was prepared in accordance

with LR 5.1.

/s/ *Robin L. McGrath*
Robin L. McGrath

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Interactive Communications International, Inc., | § § § § | |
| v. | § § | |
| Alexsam, Inc. | § § § | |

| | | |
|---|---|---|
| Alexsam, Inc., | § § § | Civil Action No. 2:11-cv-00362-RSP- |
| Plaintiff, | § § | CMC |
| v. | § § | (Pending in the United States District Court for the Eastern District of Texas) |
| IDT Corporation, | § § | The Honorable Roy S. Payne |
| Defendant. | § § § § | |

## DECLARATION OF PHILLIP GRAVES

I, Phillip Graves, declare as follows:

1.      I am Executive Vice President of Interactive Communications International, Inc. ("InComm").

2.      I have personal knowledge of the facts stated herein, and certify that, to the best of my knowledge, they are true and accurate.

1

3. InComm is a distributor and technology provider for prepaid and stored value cards.

4. One of InComm's card partners is IDT Corporation ("IDT"). InComm distributes prepaid phone cards for IDT.

5. In 2010, the only retailer to whom InComm distributed IDT cards was 7-11. Those IDT cards were activated at the time of sale when 7-11 swiped or scanned the card through one of its POS devices and sent and activation request to InComm.

6. Beginning in 2011, InComm began distributing IDT cards to additional retailers other than 7-11. Those IDT cards are activated at sale with the retailer scanning or swiping the card through one of its POS devices and sending an activation request to InComm.

7. InComm has been involved in patent disputes with Alexsam since 2004 when Alexsam sued InComm for patent infringement of the '608 and '787 patents. Alexsam then instituted arbitration against InComm in 2008 related to those two patents. Currently, Alexsam is litigating against a number of InComm's card partners based on their use of the InComm activation system which Alexsam again accuses of infringing the '608 and '787 patents.

2

8.    In each of these disputes, Alexsam sought and InComm produced numerous technical documents from InComm regarding its various activation systems and methods, and InComm has sat for over a dozen depositions over the years.

9.    In connection with the 2008 arbitration and the current litigation against its card partners, it took InComm months to locate, gather, and produce certain of the requested technical material.

10.    InComm has told Alexsam during each of the previous disputes that it is not privy to documentation concerning the specific modifications made to its retailers' point-of-sale devices.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the information set forth above is true and correct.

Dated: January 22, 2012.

Phillip Graves

3

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| Interactive Communications International, Inc., | § § § § | |
| v. | § § § | |
| Alexsam, Inc. | § § § | |
| Alexsam, Inc., | § § § | Civil Action No. 2:11-cv-00362-RSP- |
| Plaintiff, | § § | CMC |
| v. | § § | (Pending in the United States District Court for the Eastern District of Texas) |
| IDT Corporation, | § § | |
| Defendant. | § § § § § | The Honorable Roy S. Payne |

## <u>DECLARATION OF GLEN E. SUMMERS</u>

I, Glen E. Summers, declare and state as follows:

1. I am a partner at Bartlit Beck Herman Palenchar & Scott LLP.  I am lead counsel for IDT Corporation in Civil Action No. 2:11-cv-00362-RSP-CMC pending in the Eastern District of Texas.

2. I have personal knowledge of the facts stated herein, and certify that, to the best of my knowledge, they are true and accurate.

3. Alexsam, Inc. sued IDT for patent infringement in September of 2007, Civil Action No. 2:07-cv-00420-CE, in the Eastern District of Texas (the "First Litigation") alleging that the systems used to activate certain IDT prepaid phone cards and gift cards infringed certain system claims of U.S. Patent No. 6,000,608 ("the '608 patent") and U.S. Patent No. 6,189,787 ("the '787 patent").

4. Claim 57 was the only independent claim of the '608 patent asserted at trial. That claim recites a system comprised of, among other things: (i) a card encoded with a "bank identification number" or "BIN"; (ii) that is activated at an "unmodified existing standard retail point-of sale device" or "POS device"; (iii) with the BIN being routed through a "transaction processor"; (iv) to a "processing hub".

5. Alexsam also asserted infringement of Claim 14 of the '787 patent at trial. However, the court in the First Litigation granted JMOL of non-infringement as to Claim 14 of the '787 patent.

6. Shortly before trial in the First Litigation, Alexsam moved for sanctions on the ground that IDT failed to disclose in discovery that certain cards were BIN-encoded. Among the cards that Alexsam claimed IDT failed to disclose as BIN-

encoded were certain IDT phone cards sold at 7-Eleven. These phone cards were

activated over certain systems provided by Interactive Communications

International, Inc. ("InComm") connecting 7-Eleven and IDT.

7. During trial in the First Litigation, the court granted Alexsam's motion

for sanctions. Specifically, the Court held:

> To cure the prejudice to the Plaintiff and to prevent this conduct from
> occurring in the future, I am declaring or deeming established that the
> Blackhawk cards, the InComm cards, the PaySpot cards, and the Sears cards,
> when used over IDT's system, infringe the patents-in-suit. The jury will be
> so instructed.

Trial Tr. 57:11-17, Feb. 10, 2011 am.

8. After receiving an instruction that the Court had already determined

these cards to infringe, the jury found infringement by other accused card products

and awarded damages to Alexsam for both the cards found to infringe and those

the Court had deemed to infringe as a litigation sanction.

9. The Court did not issue an injunction against IDT. Instead, Alexsam

instituted the current IDT Litigation seeking post-verdict damages for the

continued activation of cards found or deemed to infringe in the First Litigation.

10. Subsequent to the judgment in the First Litigation, InComm and IDT

have entered into an agreement pursuant to which InComm distributes certain IDT

phone cards to new retailers other than 7-Eleven. These cards are necessarily

activated at different POS devices at these other retailers' stores. The encoding on these cards is also different than the encoding contained on the cards sold at 7-Eleven.

11. At the close of fact discovery in the current IDT litigation, Alexsam for the first time suggested that it would seek royalties for IDT phone cards distributed by InComm to new retailers other than 7-Eleven, specifically cards sold at Family Dollar and Meijer stores.

12. During a December 21, 2012 pre-trial conference in the current IDT Litigation, Alexsam accused IDT of failing to produce sales data for these new InComm-distributed cards. IDT responded by noting that these cards were only first accused of infringement at the very close of fact discovery and that no substantive discovery regarding these new cards had been taken. The Court then briefly continued the trial date in order to allow the parties to take any necessary discovery with respect to these newly-accused card products.

13. The parties have since discussed the issue of the standard to be applied in determining whether these new InComm-distributed cards sold at other retailers are to be included in the Court's prior sanction. Specifically, in the last several weeks, I have had a number of communications with Alexsam's counsel, Alison Richards, who agreed with me that the standard for determining whether the

sanction applies to the new cards was not whether the new IDT cards are similar to the 7-Eleven Cards. That is, Alexsam would not be pursuing a "no more than colorably different" standard.

14. Rather, Alexsam's counsel indicated that Alexsam's position was that the sanction was intended to and did apply to all cards distributed by InComm regardless of any similarity, or lack thereof, to the cards sold at 7-Eleven.

15. At no time during the First Litigation did Alexsam or IDT subpoena InComm or 7-Eleven, or otherwise seek technical documents or testimony from InComm or 7-Eleven, regarding systems used to activate the 7-Eleven/InComm cards that were deemed to infringe pursuant to the Court's sanction. Such information was sought and received by IDT in connection with the current IDT Litigation.

16. In the upcoming trial of the present IDT Litigation, IDT intends to seek relief from the Court's prior sanction decision for the 7-Eleven cards on the grounds that any further application of the sanction would be unjust because newly-discovered information makes clear that (i) the 7-Eleven cards are in fact not encoded with a BIN (and IDT was thus under no obligation to disclose them as BIN-encoded) and (ii) Alexsam's claim of infringement with respect to the 7-Eleven Cards was frivolous for this and other reasons.

17.   In the upcoming trial of the present IDT Litigation, IDT also intends to provide the Court with basic background concerning the new cards distributed by InComm, including evidence that the (i) new InComm-distributed cards are activated at different retailers who necessarily use different POS devices such that the systems used to activate the new InComm-distributed cards necessarily differ from the systems used to activate the 7-Eleven cards at issue in the First Litigation, and (ii) these new cards and systems all post-date the First Litigation.  IDT does not anticipate that the upcoming trial will require either an infringement analysis or application of the colorable difference standard.

18.   IDT has agreed to produce to Alexsam the information in its possession and control regarding these issues, and has also agreed to provide data concerning the number of activations of the new InComm-distributed cards.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the information set forth above is true and correct.

Dated: January 22, 2012

Glen E. Summers